IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JULIAN RAY BETTON,<br><br>        Plaintiff,<br><br>    v.<br><br>BILL KNOWLES in his individual capacity and official capacity as Commander of the 15th Circuit Drug Enforcement Unit Task Force; JIMMY RICHARDSON, II in his individual capacity and official capacity as 15th Circuit Solicitor; DEAN BISHOP in his individual capacity; CHAD GUESS in his individual capacity; FRANK WADDELL in his individual capacity; CHRIS DENNIS in his individual capacity; and DAVID BELUE in his individual capacity; and THE CITY OF MYRTLE BEACH,<br><br>        Defendants. | CA NO. 4:15-cv-04638-AMQ-KDW<br><br>**Defendant David Belue's Objections to the Report and Recommendation of the Honorable Kaymani D. West, United States Magistrate Judge (ECF No. 173)** |

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, Defendant David Belue ("Belue") respectfully objects to the Report and Recommendation of the Honorable Kaymani D. West, United States Magistrate Judge (ECF No. 173) on Belue's Motion for Summary Judgment (ECF No. 149) and respectfully requests that this Court grant Belue's Motion for Summary Judgment.

**INTRODUCTION**

The Magistrate Judge's Report and Recommendation recommended this Court deny Belue's motion for summary judgment as to Plaintiff Julian Betton's ("Betton") claims against him. Belue respectfully contends the Magistrate Judge erred when she reported and recommended that Belue be denied qualified immunity for Betton's Section 1983 claims.

1

The Magistrate Judge erred when she found that Belue used unreasonable force when he fired his weapon at Betton.

The Magistrate Judge erred when she found there were no exigent circumstances connected with Belue's entry into Betton's apartment and Belue violated Betton's clearly established constitutional rights.

The Magistrate Judge erred when she found that Belue could be held personally liable for the state law claims in connection with the facts of the present case.

## DISCUSSION

### I. Qualified Immunity

The Magistrate Judge correctly stated the law governing qualified immunity. When evaluating a qualified immunity defense, the court should determine: (1) whether the facts presented at summary judgment, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009).

In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004) (quoting *Saucier v. Katz,* 533 U.S. 194, 200 (2001)). "If the right was not clearly established in the specific context of the case – that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted – then the law affords immunity from suit." *Id.*

Belue respectfully contends that in the specific context of the above captioned lawsuit, he is shielded from liability by the defense of qualified immunity.

### A. Excessive Force – Qualified Immunity

The Magistrate Judge correctly stated the United States Supreme Court, the Fourth Circuit, and other circuits have consistently held that officers may use a reasonable amount of force to secure a suspect. *See, e.g., Scott v. Harris*, 550 U.S. 372 (2007); *Graham v. Connor*, 490 U.S. 386 (1989); and *Thomas v. Holly*, 533 F.App'x 208 (4th Cir. 2013). *Graham* instructs that in analyzing the amount of force used, the court should consider three factors: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether he actively resisted arrest or attempted to evade arrest by flight. 490 U.S. 386.

In considering whether an officer used reasonable force, a court must focus on the moment the force is employed. *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996). A law enforcement officer has the legal right to use deadly force if the officer has reasonable cause to believe that the suspect posed an immediate threat to the safety of the officer or others, and deadly force was needed to avoid that threat. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

Belue respectfully contends the Magistrate Judge erred in applying the laws governing excessive force to the undisputed facts.

*1.* Graham*'s Three Factors*

#### *a. Severity of the Crime at Issue*

Belue respectfully contends the Magistrate Judge erred when she ended her analysis of the severity of Betton's crime with a facial analysis of the search warrant obtained by the case agent, Chad Guess. ECF No. 173 at 20-21. The question of the severity of the crime at issue

should not be limited to a facial analysis of the warrants. "The question is whether the totality of the circumstances justifies a particular sort of…seizure." *Graham*, 490 U.S. at 396 (citing *Tennessee*, 471 U.S. at 8-9).

An analysis of the totality of the circumstances should have included an analysis of the fact the police officers believed Betton was a fugitive from Ohio, he openly displayed and had ready access to firearms, and he drew out one of those weapons in their presence. While the sale of marijuana may be a non-violent offense, Betton's fugitive status in Ohio indicated a motive to resist arrest; his access to firearms gave him the ability to violently resist arrest; and he instinctively resisted arrest by immediately drawing his weapon when he encountered the police officers. For purposes of Belue's qualified immunity for excessive use of force, Betton's subjective state of mind was not known to Belue. A reasonable police officer would not assume that just because Betton was being arrested for selling marijuana, he would not use his drawn weapon to kill Belue.

### b. Immediate Threat of Harm

Belue respectfully contends the Magistrate Judge erred when she recommended a finding that the question of whether Betton posed an immediate threat was a question of fact. The Magistrate Judge stated there were questions of fact on whether the officers verbally warned Betton and whether Betton actually pointed his weapon at the police officers. ECF No. 173 at 25-27. The Magistrate Judge appears to have imposed a rigid requirement that police officers must first give a verbal warning, wait until the suspect refuses to comply and then wait until the suspect points his weapon at the police officers before the officers can consider the suspect an immediate threat.

4

Belue contends that verbal warnings, failures to comply, and pointing weapons are not clearly established threshold requirements for determining whether a suspect poses an immediate threat. *See Salazar-Limon v. City of Houston, Tex.*, 137 S.Ct. 1277 (2017). In *Salazar-Limon,* Justice Sotomayor noted "the courts below needed to ask only one question: Did [the arrestee] turn and reach for his waistband, or not? If he did, [the officer's] use of force was reasonable. If he did not, a jury could justifiably decide that the use of force was excessive." *Id.* at 1281 (Sotomayor, dissenting).

In the present case there is no dispute over whether Betton reached in his waistband and drew his weapon before he was shot by the police officers. Betton testified:

> Q. Okay. Like, what was your mental thinking? Or were you just on instinct?
>
> A. I would say instinct. Like I said, I remember coming out of the bathroom, seeing the figures, thinking to myself what the fuck, reaching for the gun, and getting shot. I mean, like it was -- like really was like, what's going on, reach for your gun, you're dead. And that was that.

ECF No. 149-22 at 120:18-25.

Belue contends the Supreme Court's admonition in *Graham* is for courts to judge the use of force from the perspective of a reasonable officer on the scene rather than the 20/20 vision of hindsight. Betton's police expert, Chuck Drago was asked about the reasonableness of the officers' decision to fire their weapons at Betton. He testified:

> Q. Okay, did you feel that the – that the decision to fire at Julian Betton was reasonable in this case?
>
> A. I think based on what the officers testified, based on what they said they believed occurred, I think it was a reasonable response by the police officers.

ECF No. 149-12 at 71:22-72:3.

### *c. Actively Resisting Arrest*

5

Belue concedes there is a question of fact whether Betton believed he was consciously resisting arrest by police officers. However, Belue contends resisting arrest is not the sole criteria for determining qualified immunity. Further, there is no question of fact on whether Betton was resisting someone when he drew his weapon. The question of whether Betton knew the "figures" were police officers or someone else did not reduce the lethal threat to Belue. The courts have been clear that questions of excessive use of force should be judged on the "totality of the circumstances." *Graham*, 490 U.S. at 396.

Belue respectfully requests this Court consider the totality of the undisputed circumstances facing him at the moment he made the decision to fire his weapon at Betton. Belue contends that a consideration of whether Belue used excessive force should not include general conduct before or after Betton was shot. *See County of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1546 (2017) (Holding that once a use of force is deemed reasonable under *Graham*, it may not be found unreasonable by reference to some separate alleged constitutional violation). The question of what proximately caused Betton to draw his weapon is not a part of the analysis for determining Belue's qualified immunity for excessive use of force. *Id.*

### *B. Unlawful Entry – Qualified Immunity*

Belue respectfully contends the Magistrate Judge erred when she found Belue was not entitled to qualified immunity on Betton's unlawful entry claim. For purposes of Belue's objection, it is not necessary to address the actions of other police officers. The dispositive questions are: 1) whether a reasonable police officer could have believed opening Betton's screen door was lawful in light of clearly established law and the information possessed by Belue; and 2) whether a reasonable police officer could have believed entering Betton's apartment after his fellow officers had entered was lawful in light of clearly established law and

the information possessed by Belue. *See, e.g., Youngbey v. March, et al.*, 676 F.3d 1114, 1114–29 (D.C. Cir. 2012).

Qualified immunity is meant to shield officials from liability for making "bad guesses in gray areas." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Belue contends that opening a screen door and aiding his fellow officers after they entered a dangerous situation falls into a gray area.

In reaching her recommendation, the Magistrate Judge determined that separate acts by separate officers were all one and the same act for purposes of analyzing Belue's qualified immunity. She also stated, in reference to Belue, "At bottom, he failed to knock and he failed to announce." ECF No. 173 at 25. Belue contends the Magistrate Judge's conclusion is an over generalization that omits a careful analysis of the facts. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The [qualified immunity] inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition…Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that 'it is sometimes difficult for an officer to determine how the relevant legal doctrine…will apply to the factual situation the officer confronts.") (citations omitted).

*1. Opening the Unlocked Screen Door*

Belue contends the act of opening Betton's unlocked screen door in the execution of a "knock and announce" search warrant did not violate clearly established law. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 406-407 (2006) (Holding officer's opening screen door and yelling police did not violate the Fourth Amendment.); *People v. Harvey,* 38 Mich. App. 39, 195 N.W.2d 773 (1972) (Holding officer's breaking open screen door prior to announcing authority and purpose did not violate state statute on executing search warrants.); *State v. Steingraber*, 296

N.W.2d 543 (S.D. 1980) (Holding officer's opening screen door prior to knocking and announcing did not violate state statute on executing search warrants.); and 85 A.L.R. 5th 1 (Originally published in 2001).

In his deposition, Betton's law enforcement expert, Charles Drago, who has over 30 years of law enforcement experience including supervision in patrol, street narcotics, SWAT, K-9, and street crimes, testified:

> Q. Okay. So there's – so he's not violating anybody's Fourth Amendment rights by opening that screen door?
>
> A. Just by opening the door?
>
> Q. Right.
>
> A. No, I wouldn't say – I wouldn't say he did, no.

ECF No. 149-12 at 66:16-22.

*2. Entry into Betton's Apartment*

Belue acknowledges the Fourth Amendment "incorporates the common-law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry." *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997). However, the knock-and-announce requirement is not inviolate. The Supreme Court has recognized that it can give way "under circumstances presenting a threat of physical violence." *Id.* at 391.

Belue contends he entered Betton's apartment under circumstances presenting a threat of physical violence to his fellow officers, and his entry came within the exception to the knock and announce rule for purposes of qualified immunity.

In the instant case, Charles Drago, Betton's law enforcement expert testified:

> Q. Would it – would it make sense for Belue to say, all right, this entry – assuming, arguendo, that there's no knock, would it make sense for him to say, wait a minute, there hasn't been a knock; we need to back away from the situation?
>
> A. This is after the door has been opened?
>
> Q. Right.
>
> A. – and the officers are entering?
>
> Q. Right.
>
> A. No. At that point he – the team's lack of preparation basically would have committed him.

ECF No. 149-12 at 68:19-69:7.

Belue contends his entry into Betton's apartment did not violate clearly established law. *See Bellotte v. Edwards,* 629 F.3d 415, 426 (4th Cir. 2011) ("[T]he absence of a no-knock warrant 'should not be interpreted to remove the officers' authority to exercise independent judgment concerning the wisdom of a no-knock entry at the time the warrant is being executed.'") (citations omitted); *Bonner v. Anderson,* 81 F.3d 472, 477 (4th Cir. 1996) ("Officers must nearly instantaneously determine whether such exigent circumstances exist, and they often are forced to act on incomplete clues as to what will unfold when they execute a search warrant.") (Wilkinson, dissenting).

Belue contends general suppression of evidence legal arguments for violating the knock and announce rule should not be used in analyzing Betton's Section 1983 civil claims against Belue. In criminal cases weighing the suppression of evidence and the knock and announce rule, courts only need to consider whether the search or seizure violated the Fourth Amendment.

On the other hand, Section 1983 claims require an analysis of the liability of each individual officer for his own acts. Belue contends that he should not be held liable for the acts

9

of the officer who rammed the door or for the officers who entered after the door was opened. Each officer should be held accountable for his own particular conduct.

## II. State Law Claims – South Carolina Tort Claims Act

Belue respectfully objects to the Magistrate Judges recommendation that he be denied the relief afforded him under the South Carolina Tort Claims Act. ECF No. 173. The Magistrate Judge stated that because she found questions of fact remained concerning Belue's alleged unlawful entry and alleged unreasonable use of force, there were genuine issues of fact on the application of the South Carolina Tort Claims Act to Betton's claims for trespass and assault and battery. *Id.* Belue contends that the Magistrate judge erred because there is no evidence that Belue acted outside the scope of his duties or that his acts constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude. S.C. Code Ann. § 15-78-70.

Betton alleges that Belue trespassed onto his property and shot him with actual malice. Belue contends, for the reasons set forth above in his discussion of qualified immunity as to the alleged unlawful entry and alleged unreasonable use of force, he is entitled to the immunity afforded him by the South Carolina Tort Claims Act.

## CONCLUSION

For the reasons set forth above and for the reasons set forth in Belue's Memorandum in Support of his Motion for Summary Judgment, Belue respectfully objects to the Magistrate Judge's Report and Recommendation and requests this Court make a *de novo* review of his Motion for Summary Judgment.

Signature Follows

                                          By: s/*James R. Battle*  
                                          James R. Battle, Fed. ID # 10221  
                                          Michael W. Battle, Fed. ID # 1243  
                                          ATTORNEYS FOR DEFENDANT DAVID BELUE  
                                          BATTLE LAW FIRM, LLC  
                                          PO Box 530  
                                          1200 Main Street  
                                          Conway, SC 29528  
                                          (843) 248-4321 (tel)  
                                          (843) 248-4512 (fax)

June 14, 2018